UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMMIE L. BOOKER-EL, | ) |
| Petitioner, | ) |
| v. | ) No. 1:18-cv-03913-TWP-MJD |
| KEITH BUTTS, | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Mr. Sammie L. Booker-El for a writ of habeas corpus challenges a prison disciplinary proceeding on July 18, 2018, identified as NCF 18-07-0111. For the reasons explained in this Entry, Mr. Booker-El's habeas petition must be **denied.**

**A.** **Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

**B.     The Disciplinary Proceeding**

On July 15, 2018, Officer Salgado wrote a conduct report charging Mr. Booker-El with violating Code B-223, engaging or encouraging others in a group demonstration. Dkt. 8-1. The conduct report states:

> At the above date and approximately [sic] time [July 15, 2018, at 14:38p.m.] offender Sammie Booker refused to go inside of the house and encorage [sic] other to [do] the same thing. This happen[ed] after he and 3 other offenders were advised that they were going to receive a conduct report for disobeying an order. He stop[ped] in front of the house and indicated to the others 'Let['s] start a riot now if the sargeant [sic] dont come.' Offender Booker was advised of this conduct report. End of report.

*Id.*

Officer Salgado also completed an incident report which stated that Mr. Booker-El "was throwing his hands up[,] pacing[,] yelling[,] and he clenched his fist at which time I deployed [a] chemical agent" hitting Booker-El "on the side of the neck." Dkt. 8-2. Two other officers responded to the incident and completed incident reports. Sergeant Altom witnessed Officer Salgado's use of the chemical agent on Mr. Booker-El and subsequently placed Mr. Booker-El in mechanical restraints. Dkt. 8-3. Sergeant Anderson escorted Mr. Booker-El to medical without incident. Dkt. 8-4. A serious incident report was also completed which stated that Mr. Booker-El was "given multiple orders to enter C unit. . . . Officer Salga[d]o states the offender refused all orders and became disorderly and had clenched fists." Dkt. 8-5.

On July 17, 2018, Mr. Booker-El was notified of the charge, which the disciplinary hearing board had modified to B-223/240, attempt to engage or encourage others in a group demonstration, and served Mr. Booker-El with a copy of the conduct report and the screening report. Dkt. 8-7. Mr. Booker-El pleaded not guilty and declined the appointment of a lay advocate, although one was later appointed. Dkt. 8-8. Mr. Booker-El did not request any witnesses, but he did request

video from "1430 to 1445 in front of C-Dorm 7-15-18." *Id*.

On July 17, 2018, the hearing officer reviewed the requested video and issued a written summary stating that the "[v]ideo shows offender identified as offender Booker, Sammie #127170 by Officer Salgado on the yard in front of C-unit pacing and waiving [sic] his arms around. Camera does not record sound." Dkt. 8-10.

On July 18, 2018, a disciplinary hearing was held and Mr. Booker-El pleaded not guilty and stated, "Me and 3 others were waiting on the Sgt. to get there, we knew he was on the way. The officer told us to go in. We did not go in." Dkt. 8-9. Mr. Booker-El was found guilty based on the conduct report, the video evidence, and Mr. Booker-El's statement. *Id*. As a result of the guilty finding, Mr. Booker-El was sanctioned with a 30-day loss of good-time credit. *Id*.

Mr. Booker-El filed appeals to the Facility Head and the Final Reviewing Authority. Dkt. 8-13; dkt. 8-14. Both appeals were denied. *Id*. Mr. Booker-El then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C.  Analysis**

Mr. Booker-El contends that his due process rights were violated by the following: (1) denial of an impartial decision maker at the disciplinary hearing; (2) denial of an impartial review upon appeal; (3) alteration of the charge; (4) insufficient evidence; and (5) unconstitutional Indiana Department of Correction ("IDOC") policy. Dkt. 1 at 3-5.

    1.  <u>Impartial Decision Maker</u>

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of

honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666-67 (7th Cir. 2003); *see Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Booker-El contends that the hearing officer was biased because he did not acknowledge that Mr. Booker-El was sprayed by Officer Salgado "in the back of the head" and that the video evidence showed that Mr. Booker-El was facing in the direction of the Sergeant. Dkt. 1 at 3. Mr. Booker-El does not assert that the hearing officer was involved in the underlying events leading to his conviction or the investigation thereof. In making the determination of guilt, the hearing officer relied upon the video and other evidence. Dkt. 8-9. The hearing officer was entitled to weigh the evidence before him and Mr. Booker-El has not presented any evidence to overcome the hearing officer's presumption of honesty and integrity.

Mr. Booker-El is not entitled to habeas relief on this basis.

### 2. Impartial Review on Appeal

There is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief. The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards

during an administrative appeal, nor even a right to appeal at all. The procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

Mr. Booker-El asserts that the warden and final reviewing authority failed to acknowledge that Mr. Booker-El was told by Sergeant Altom that he was sprayed for "failure to obey a direct order" and not "[attempted] group demonstration" for which he was convicted. Dkt. 1 at 3. As noted above, however, there is no due process right to safeguards in an administrative appeal.

Mr. Booker-El is not entitled to habeas relief on this basis.

### 3. Alteration of Charge

Mr. Booker-El asserts that the charge of attempted group demonstration was changed in violation of his due process rights. Specifically, Mr. Booker-El states that he was told by Sergeant Altom that he was sprayed for "failure to obey a direct order" and that his Initial Restrictive Housing Review listed "[f]ailure to follow direct order" as the reason for Mr. Booker-El's being placed in restrictive housing. Dkt. 1 at 3-4, 11.

If the facts of the initial charge are "sufficient to apprise [the petitioner] that he could be subject to a [different] charge," due process is not violated because the defendant is on notice that he could be subject to a different charge and has all the factual information necessary to prepare a defense against that charge. *Northern v. Hanks*, 326 F.3d 909, 910, 911 (7th Cir. 2003) (citations omitted); *see Moshenek v. Vannatta*, 74 Fed. Appx. 639, 641 (7th Cir. 2003) (noting that the Seventh Circuit in *Northern* held that the "notice of the original offense is sufficient where the modified charge has the same factual basis").

Mr. Booker-El was notified of the charge of group demonstration, rather than failure to follow a direct order, in the conduct report issued on July 15, 2018. Dkt. 8-1. The screening report,

issued on July 17, 2018, contained the charge of attempted group demonstration. Dkt. 8-7. The underlying facts leading to the disciplinary hearing were unchanged and Mr. Booker-El had all the information needed to prepare a defense against the charge of attempted group demonstration.

Mr. Booker-El is not entitled to habeas relief on this basis.

### 4. Insufficient Evidence

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Mr. Booker-El asserts that the hearing officer "took the Officer's statement in the conduct report as proof of my guilt" and ignored that fact that Mr. Booker-El was sprayed by Officer Salgado and that he was facing the direction of the Sergeant. Dkt. 1 at 3. However, the hearing report states that hearing officer relied not only on the conduct report, but also on Mr. Booker-El's statement and the video evidence of the incident. Dkt. 8-9. The conduct report states that "[Mr. Booker-El] stop[ped] in front of the house and indicated to the others 'let['s] start a riot now if the sargeant [sic] dont come.'" Dkt. 8-1. The hearing officer also considered Mr. Booker-El's statement that "me and 3 others were waiting on the sgt. to get there, we knew he was on the way.

The officer told us to go in. We did not go in." Dkt. 8-9. The hearing officer's decision and finding of guilt was based on some evidence.

Mr. Booker-El is not entitled to relief on this basis.

### 5. IDOC Policy

Mr. Booker-El challenges the constitutionality of IDOC policy regarding the restoration and rescission of credit time. Dkt. 8-15 at 47. Because attempted group demonstration is a Code B offense, Mr. Booker-El subsequently lost 120 days of additional good-time credit, related to previous disciplinary violations, under IDOC's restoration and rescission policy. Dkt. 8-11 at 2–3; dkt. 8-12. Under the policy, an inmate who loses good-time credit in a disciplinary proceeding can petition for the restoration of up to 50% of the lost time if he satisfies the eligibility criteria, including good behavior and being conduct free for six months, among other things. Dkt. 8-15 at 45–52. Restoration of good-time credit, however, is contingent on maintaining good behavior after the restoration. *Id*. at 47–48. If the inmate is found guilty of a Class A or B offense after having time restored, then that restored time is automatically rescinded. *Id.* After applying this policy to Mr. Booker-El, 120 days of previously restored good-time credit was rescinded. Dkts. 8-11, 8-12.

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the IDOC Appeals Review Officer or Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002). Before Mr. Booker-El filed this action, he was aware of the decision to rescind 120 days of additional good-time credit as evidenced by a classification appeal that he filed on July 26, 2018. Dkt. 1 at 16. However, Mr. Booker-El did not pursue this matter in state court and he failed to mention this claim in his appeal to the Final Reviewing Authority on July 31, 2018. Dkt. 8-14.

Mr. Booker-El is not entitled to relief on this basis.

## D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Booker-El to the relief he seeks. Accordingly, Mr. Booker-El's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 10/1/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SAMMIE L. BOOKER-EL
127170
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Aaron T. Craft
INDIANA ATTORNEY GENERAL
aaron.craft@atg.in.gov

Josiah Swinney
INDIANA ATTORNEY GENERAL
josiah.swinney@atg.in.gov